UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AMAR GUEYE,

    Plaintiff,

v.

UNITED STATES POSTAL SERVICES;

THE SUPREME COURT OF THE UNITED STATES;

THE U.S. COMMITTEE ON THE JUDICIARY;

GOVERNOR MIKE DEWINE & THE STATE OF OHIO;

GOVERNOR MATT BEVIN AND THE STATE OF KENTUCKY;

THE AMERICAN BAR ASSOCIATION & ALL ITS PAST, CURRENT & FUTURE PRESIDENTS;

MARGARET WEICHERT & USAJOBS.GOV—THE OFFICE OF PERSONNEL MANAGEMENT;

WESTERN MICHIGAN UNIVERSITY— THOMAS M. COOLEY LAW SCHOOL & ALL MEMBERS OF ITS ALUMNI;

THE LAW SCHOOL ADMISSION COUNCIL & ALL LAW SCHOOLS APPLIED BY PLAINTIFF;

WILLIAM GATES III & MICROSOFT CORPORATION;

THE NEW YORK STATE BOARD OF LAW EXAMINERS; and

19-CV-418
DECISION AND ORDER

---

| |
|---|
| LARRY PAGE & GOOGLE, INC; |
| Defendants. |

The pro se plaintiff, Amar Gueye, has filed a complaint asserting various statutory and constitutional claims against a long list of defendants. Docket Item 6. He also has moved to proceed in forma pauperis (that is, as someone who should have the prepayment of the ordinary filing fee waived because he cannot afford it) and has filed the required affidavit. Docket Item 2.

Because Gueye meets the statutory requirements to proceed in forma pauperis under 28 U.S.C. § 1915(a), his request is granted. As a result, the Court has screened the complaint under 28 U.S.C. § 1915(e). For the reasons that follow, Gueye's claims are dismissed.

## **DISCUSSION**

**I.    IN FORMA PAUPERIS**

A party seeking to bring a civil action in federal court ordinarily is required to pay a $350 filing fee, 28 U.S.C. § 1914, and an additional administrative fee of $50. *See Wagoner v. Ciocca*, 2016 WL 5720827, at *1 (W.D.N.Y. Sept. 30, 2016). But a litigant may ask to avoid the payments by moving for leave to proceed in forma pauperis. *See* 28 U.S.C. § 1915(a)(1).

The court evaluates a litigant's financial status to determine whether he or she is eligible to proceed in forma pauperis under § 1915(a).[1] To be eligible, an applicant

---

[1] 28 U.S.C. § 1915 addresses leave to proceed in forma pauperis. That section's requirement that "the prisoner" provide a statement of all assets that he or she

must complete an affidavit demonstrating that he or she meets the requirements of § 1915(a). More specifically, applicants are not required to "demonstrate absolute destitution," *Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983), but must establish that they cannot afford to pay for both the necessities of life and the costs of litigation. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). Because Gueye meets the statutory requirements of 28 U.S.C. § 1915(a), Docket Item 2, he is granted permission to proceed in forma pauperis. Therefore, under 28 U.S.C. § 1915(e)(2)(B), this Court screens the complaint.

## II. SCREENING THE COMPLAINT

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). Under § 1915, the court "shall dismiss the case at any time if the court determines that [it] . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "The settled rule is that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Flores v. S. Peru Copper Corp.*, 343 F.3d 140, 148 (2d Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46

---

possesses does not preclude non-prisoners from proceeding in forma pauperis in federal court. *Floyd v. U.S. Postal Serv.*, 105 F.3d 274, 275-76 (6th Cir. 1997). "Only prisoners, however, have the additional requirement of filing a prison trust account" statement under 28 U.S.C. § 1915(a)(2). *Id.* at 277.

3

(1957)). But leave to amend a complaint should be denied if any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

In evaluating the complaint, the court must accept all the plaintiff's factual allegations as true and draw all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted)).

### A. The Complaint's Allegations

All defendants—the United States Postal Services; The Supreme Court of the United States; the U.S. Committee on the Judiciary; Governor Mike DeWine and the State of Ohio; Governor Matt Bevin and the State of Kentucky; The American Bar Association and all its Past, Current and Future Presidents; Margaret Weichert and USAJOBS.GOV – The Office of Personnel Management; Western Michigan University – Thomas M. Cooley Law School and all members of its Alumni; The Law School Admission Council and All Law Schools Applied by Plaintiff; William Gates III and Microsoft Corporation; the New York State Board of Law Examiners; and Larry Page and Google—"have either concurrently, subsequently, close or remotely conspired to violate [Gueye's] constitutional Rights in the United States for the past Twenty Five Years without due process nor remedies." Docket Item 6 at 4. The conspiracy consists at least in part of "a pattern of vicious employment discriminations, malicious retaliations, multiple wrongful arrests, one High Tech Prosecution . . . in an attempt to

4

intimidate [Gueye] in his Advocacy Television Program named Truth Matters in Cincinnati, Ohio and a concerted effort by all of the above named Defendants and others to hatefully inflict decades of persecution on Plaintiff's life, his children and his biological family members." *Id.* at 3. A liberal reading of the complaint gives the following background of that conspiracy:

Gueye came to the United States of America in the 1980s. *Id.* "He worked sometimes two or three jobs while going to school at the same time." *Id.* Gueye graduated with honors "in American College." *Id.* He was "accepted at Columbia University, [but] he chose to attend SUNY & New York University" for his graduate studies because their programs "were more compatible with [Gueye's] schedule as a [t]eacher with the New York Board of Education." *Id.*

Gueye was "wrongfully discharged from the New York Board of Education." *Id.* Although he "won the arbitration," he "was not compensated for all his lost wages." *Id.*

Gueye operated a nonprofit organization. *See id.* While he was "educating American children through his nonprofit with donations of books, computers, computer parts and small scholarship stipdents, [Gueye] had to constantly borrow money from his sisters in Senegal to manage the" organization's programs "for the past twenty five years." *Id.* Even though the programs that Gueye instituted at his nonprofit organization "have been replicated overtly or covertly in many States," the organization "never received a dime from any local, state or federal sources." *Id.*

When he was living in Ohio, Gueye filed several lawsuits in federal court. *See id.* He sued the University of Cincinnati and the University of Cincinnati Hospital. *See id.* In one case for "Civil discrimination," Magistrate Judge Stephanie K. Bowman

5

"deliberately cited thirty seven criminal cases to support her improper reasoning and paint[ed Gueye] as a criminal." Because Judge Bowman's "legal misrepresentation" was "incompetent and purely racist," Gueye "responded to the racist attack." *Id.* at 4. Subsequently, "Judge Sandra Beckwith accused [Gueye] of disrespecting Judge . . . Bowman." *Id.*

Gueye "spearheaded . . . a project" to build a law school in the United States "by the Islamic community . . . because he feels that the Prophet Mohamed would be prouder of his followers for spending their Trillions of Dollars from their Oil Rich countries to build educational institutions rather than foolishly purchasing Western weapons for Muslims to endlessly kill each other." *Id.* Specifically, Gueye "discussed the idea to establish a new Muslim Student Association at the Thomas M. Cooley Law School when he received multiple invitations from Christian, Catholic and Jewish Student Associations." *Id.* at 5. "As such, he was instantly labeled a 'Terrorist'." *Id.* "The Lansing Policce followed him for weeks without any evidence." *Id.*

"Thomas M. Cooley Law School conspired with the Lansing Police in 2003 to wrongfully arrest [Gueye] for alleged possession of drugs which the Police never found when they arrested [him] with their Machine guns, searched him, searched his vehicle, stole his money and said it was bond money at the time of the arrest without a court hearing." *Id.* "Worst, Cooley forged in 2015 some new false grades that [Gueye] never received from Cooley when [Gueye] decided to finish his Juris Doctor at another Law School while Cooley kept sending [Gueye] their free application." *Id.*

"The American Bar Association [("ABA")] has denied [Gueye] jobs for the past sixteen years." *Id.* at 5. He "has been a member of the ABA since 2003." *Id.* Even

6

though "the ABA provided legal representation to DACA Law Students, [Gueye] was never provided legal representation by the ABA." *Id*. "Other Defendants like the University of Cincinnati, Ohio; USAJOBS.GOV, the U.S. Small Business Administration and others have constantly denied [Gueye] employment opportunities based on his Islamic religion, his dark, black color, his Senegalese Origin, his age and all other legally protected rights." *Id*.

The Law School Admission Council "covertly conspired with all the Law Schools [Gueye] Applied with in 2015 simply because [Gueye] did not [buy] their 'Miracle Formula of LSAT Tests.'" *Id*.

Gueye contacted "New York Representative and Chairman of the U.S. House . . . Committee on the Judiciary, Chairman Jerrold Nadler and others for months to hold a Congressional hearing without a single response." *Id*. at 6.

"As for Google, it transformed [Gueye's] life [into] a living nightmare by posting false data on [Gueye's] name that [he] was not even aware of until friends and family members informed [him]." *Id*.

At one point, Gueye owned a "legally purchased weapon." *Id*. But it "was twice confiscated in the State of Kentucky and returned after wrongful arrests and expungements of charges." *Id*. Gueye was also "subjected to unreasonable searches and seizures during the wrongful arrest in Lansing[,] Michigan." *Id*.

"Since February 7, 2019, [Gueye] has requested that the Norwood[,] Ohio Post Office temporarily forward his mails to his" address in Buffalo, New York. *Id*. But those requests were made "to no avail despite completing the Postal service form to forward

7

the mails and multiple phone calls and emails to" post office employees. *Id.* Gueye's mail has "been repeatedly stolen from the Norwood Post Office." *Id.*

"When [Gueye's] six American Bar Journals were stolen in November 2018 at his P.O. Box" in Buffalo, Gueye "filed a complaint with the U.S. Federal Trade Commission." *Id.* Gueye called "the supervisor of the New York Buffalo Post about his stolen mails and or wrongful returns of mails to senders," but "he did nothing to stop the misconduct of his employees." *Id.* Gueye provided the supervisor with his e-mail address "to send an electronic message about any issue since they are using such a manipulative method to sabotage Black Businesses at the Buffalo Post Office." *Id.* at 7.

"Microsoft, special interest groups and U.S. Government agencies deliberately hacked [Gueye's] personal and business email." *Id.* The information that Microsoft and the coconspirators obtained included "many drafts of Book manuscripts, intellectual properties and Business trademarks for the past Fifteen years." *Id.* Gueye's Gmail account was also hacked by Google, and Google "refused to provide access despite multiple requests." *Id.* Furthermore, "Google posted false data on [Gueye's] name to smear his reputation." *Id.*

The New York Board of Law Examiners denied Gueye "the right to take the Bar Exam in February 2018 after pocketing his payment and refused him proper accommodations as well." *Id.*

"The Hamilton County Municipal Court of Ohio diligently lied to wrongfully convict [Gueye] with a jury of eight white people in 2009." *Id.* "The white Office[r] first accused [Gueye] of having a warrant." *Id.* "That was not true." *Id.* "Then Sheriff Officer James McClure willfully wrote [Gueye's] last name with T rather than G and accused him of

providing false information while he had [Gueye's] ABA membership card with [Gueye's] full name on his hands." *Id*. Gueye "had no reason to provide Officer McClure wrong information because the same information was on [Gueye's] ABA card and Officer McClure was holding it in his hands." *Id*.

"The White Judge David Stockdale who immediately retired after the Orchestrated conviction denied [Gueye] the right to subpoena the witnesses and the Ohio Supreme Court failed to hear [Gueye's] Appellate Brief." *Id*. "Worse, the African American Judge, William Mallory Jr. Of Hamilton County, Ohio denied [Gueye's] right to expunge the fraudulent charge while the State of Kentucky granted [Gueye] expungement of all wrongful charges." *Id*.

Gueye has volunteered on numerous political campaigns for democratic candidates. *Id.* at 8. He has also "spent thousands of Dollars in financial contributions to the Democratic Party for the past Twenty Five Years." *Id*.

**B.    Analysis**

"28 U.S.C. § 1915(e)(2)(B)(i) permits a court to dismiss the action of a litigant proceeding *in forma pauperis* at any time if the court determines that the action is 'frivolous or malicious.'" *McCormick v. Jackson*, 2008 WL 3891260, *1 (S.D.N.Y Aug. 21, 2008). "An action is 'frivolous' if, among other things, 'the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy.'" *Id*. (quoting *Livingston v. Adirondack Bev. Co.*, 141 F.3d 434, 437 (2d Cir. 1998)). An action also is "frivolous" if "the facts alleged 'rise to the level of the irrational or wholly incredible.'" *Id*. (quoting *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Gueye's

9

allegations as to a vast conspiracy by all the named defendants fits comfortably within those standards.

Gueye "offers not a single fact to corroborate [his] allegation of a 'meeting of the minds' among the conspirators." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011). According to the complaint, a great number of events that occurred in Gueye's life throughout the past forty years that injured him in various ways did not occur independently. Instead, all these events occurred as part of a "concerted effort to conspire by all of the . . . [d]efendants and others to hatefully inflict decades of persecution on [Gueye's] life." Docket item 6 at 3. Indeed, the concerted actions allegedly range from the failure of a branch of the United States Post office to forward Gueye's mail to his new address, to his alleged wrongful arrest by police in Lansing, Michigan. The states of Ohio and Kentucky were involved. Even Microsoft and Google were part of the scheme. Microsoft's hacking of Gueye's personal and e-mail data and Google's hacking of Gueye's e-mail account both were part of the "concerted effort."

"It is well settled that claims of conspiracy 'containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'" *Gallop*, 642 F.3d at 369 (quoting *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993)). Gueye's "allegations of conspiracy are baseless and spun entirely of 'cynical delusion and fantasy.'" *Id*. (quoting *Gallop v. Cheney*, 2010 WL 909203, at *5 (S.D.N.Y. Mar. 15, 2010)). "Courts have not hesitated to dismiss complaints asserting delusional claims of conspiracy." *Gallop*, 2010 WL 909203, at *5. Gueye's claims of a far-reaching conspiracy therefore are dismissed.

"[T]he Supreme Court has instructed the district courts to construe *pro se* complaints liberally and to apply a more flexible standard in determining the sufficiency of a *pro se* complaint than they would in reviewing a pleading submitted by counsel." *Platsky v. C.I.A.*, 953 F.2d 26, 28 (2d Cir. 1991). But this Court does not opine on whether, read liberally, the complaint may state one or more separate claims against one or more of the named defendants. That is because even if the complaint stated any such claim, with the "overarching conspiracy allegation . . . dismissed, there are limited [or no] connections between the remaining claims." *UVM Student Ass'n v. Lovell*, 888 F.3d 854, 863-64 (7th Cir. 2018). "Unrelated claims against different defendants belong in different suits." *Id.* at 863 (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)). Because "[m]isjoinder of parties is not a ground for dismissing an action," Fed R. Civ. P. 21, "[t]he proper remedy for [misjoinder of parties] is severance or dismissal without prejudice, not dismissal with prejudice." *UWM Student Ass'n*, 888 F.3d at 864. Therefore, the complaint is dismissed without prejudice to Gueye's bringing unrelated claims against the named defendants in different suits. However, the complaint is dismissed with prejudice to Gueye's bringing claims involving the concerted action of or a conspiracy involving the defendants.

## **CONCLUSION**

Gueye has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the required affidavit. The Court therefore grants his request to proceed in forma pauperis. Generally, the court will afford a pro se plaintiff an opportunity to amend or to be heard prior to dismissal. *See Abbas*, 480 F.3d at 639. But because leave to amend the pleading to bring any further conspiracy-based claims against the defendants would

11

be futile for the reasons stated above, this Court dismisses with prejudice Gueye's claims that the defendants acted in concert. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Gueye's separate claims against unrelated defendants, if he has any, are dismissed without prejudice.

    SO ORDERED.

Dated:    May 31, 2019
              Buffalo, New York

          *s/ Lawrence J. Vilardo*
          LAWRENCE J. VILARDO
          UNITED STATES DISTRICT JUDGE